# CIRCUIT COURT

OF THE

# UNITED STATES.

## VERMONT DISTRICT.

### MAY TERM, 1857.

---

THE RUTLAND & BURLINGTON RAILROAD COMPANY *v.* WILLIAM A. CROCKER.

Two instruments between substantially the same parties, if made at the same time, and constituting the same transaction, may explain and control each other, although they do not in terms refer to each other.

The plaintiffs contracted, in writing, with the Taunton Locomotive Manufacturing Company for twelve locomotives to be delivered at certain specified times. On the same day the defendant, president of said Locomotive Company, subscribed for seventy shares in the plaintiff's company, "payable in cash on the delivery of the last engine of twelve from the Taunton Locomotive Manufacturing Co." *Held*, that parol evidence was admissible to prove that these two contracts were parts of the same transaction; and if so, that the subscription was not payable until the last engine mentioned in said contract had been delivered. Delivery of any other twelve engines by said company would not be sufficient.

The facts in this case are sufficiently stated in the opinion of the court. The cause was argued at a previous term by

*E. R. Hoar* and *E. H. Bennett*, for the defendant.

*C. Linsley* and *E. J. Phelps*, for the plaintiffs.

At the present term the opinion of the court was delivered by NELSON, J.—This action was brought to recover the amount and interest of a subscription of stock, 1 June, 1847, to the Champlain and Connecticut River Railroad Company, incorporated by the legislature of Vermont. The name of the corporation was subsequently changed to that of the plaintiffs in this suit.

By the terms of the subscription the subscribers bound themselves to take the number of shares affixed to their names, and to pay for the same, according to several assessments from time to time, as ordered under the charter, and upon certain conditions particularly specified in the subscription paper.

The defendant's subscription was special for seventy shares, "payable in cash on delivery of the last engine of twelve, from the Taunton Locomotive Manufacturing Company." The shares were one hundred dollars each.

Evidence was given on the part of the plaintiffs, tending to show that the several conditions stated in the subscription paper had been complied with, and that the assessments upon the stock had been duly made, and notice given to the defendant, that all the requirements of the charter had been observed, and the road constructed.

In respect to the special condition annexed to the subscription of the defendant, the proof was that the Taunton Locomotive Co. had delivered fourteen engines, the last of which was delivered the latter part of September, 1851, and the twelfth on the latter part of February of the same year; that the engines were new, and manufactured at the company's establishment; that Mr. W. W. Fairbanks was the general agent, and the defendant the president of the company.

The defendant, in the course of the trial, gave in evidence a vote of the directors of the plaintiff corporation, under date of the 4th June, 1847, approving of a contract made with the Taunton Locomotive Company for twelve engines; and offered in evidence the contract, bearing date the 1st June, 1847, and in connection therewith proposed to call said Fairbanks, the agent, to prove that this is the contract for the engines referred to in the defendant's subscription, and that the whole number of engines had not been delivered. The court rejected the evidence, holding that the subscription was payable upon the delivery of any twelve engines by the Taunton Company.

After the fullest consideration I am satisfied the court erred in excluding this evidence. The terms of the clause annexed to the subscription import some previous agreement, or understanding, in respect to these engines, between the parties. The money was to

be paid on the delivery of the last engine of twelve from the works of which the defendant was the head. There must have been an agreement for the delivery of twelve engines, and probably at some specified time or times and especially some specified time within which the last was to have been delivered, as the payment of the money depended upon the delivery; for, if there was no specified time, either in fact or in contemplation of law, the subscription might have been rendered nugatory at the election of the defendant. He could have postponed the delivery indefinitely. Again, as the event upon which the payment of the money was to be made, to wit, the delivery of the last of the twelve engines, depended upon the act of the defendant himself, unless there was some agreement binding him or his company to deliver the engines, not only the last one of the twelve, but each and all of them, the subscription would have been a contract wholly upon one side, as no obligation or duty would exist on the part of the defendant to deliver the engines, and the time of payment might, therefore, never happen.

In order to give the subscription any binding operation or effect against the defendant, it seems to us that the reference to the twelve engines, and the delivery of them, must be construed as relating to some contract between the parties providing for the manufacture or procurement of the same, previously entered into; and which, when produced, or proven, would explain the intent and meaning of the words. The court was misled, at the moment, on the trial, from a consideration of the difficulty of permitting parol evidence to connect the two instruments; and that the rule should be confined to papers explanatory of the transaction which on the face of them referred to one another. But the rule thus applied is manifestly too narrow. The paper is admissible, and relevant, if in point of fact it is a part of the same transaction; 2 Denio 133. This principle is conclusive against the ruling upon the point in question. The evidence offered and rejected was full to make out not only the contract in respect to the engines, but also that it constituted a material element in the contract of subscription. It was made of even date with it, between substantially the same parties, and the same number of engines: the price, time, and terms of

delivery agreed upon, and approved by the directors of the railroad company, the plaintiffs, four days afterwards.

We should add that this seems to be the interpretation given to the clause in the subscription by the pleader in the declaration.

There are several other very important questions presented in the case, and which were argued by the counsel, but, as the case must go down for a new trial, we shall leave them for a more full consideration and further argument, as the facts may appear upon the second trial.

New trial granted, with *venire de novo*; costs to abide event.